## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MICHAEL LEE STROPE, ) | |
| also known as Gordon Strope, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 06-3021-KHV |
| WILLIAM CUMMINGS, et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## MEMORANDUM AND ORDER

Under 42 U.S.C. §§ 1983 and 1985(3), plaintiff Michael Lee Strope, acting *pro se*, asserts claims arising out of his incarceration at Lansing Correctional Facility in Lansing, Kansas.[1] This matter comes before the Court on Defendants' Motion To Dismiss Pursuant To Rule 12(b)(6) (Doc. #47) filed May 15, 2007. For the reasons stated below, the Court sustains the motion in part and overrules the motion in part.

## Governing Standards

Defendants seek dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997). The Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences from those facts in favor of plaintiff. See Shaw v.

---

[1] Strope is presently an inmate at El Dorado Correctional Facility in El Dorado, Kansas.

Valdez, 819 F.2d 965, 968 (10th Cir. 1987). In reviewing the sufficiency of plaintiff's complaint, the issue is not whether plaintiff will prevail, but whether he is entitled to offer evidence to support his claims. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although plaintiff need not precisely state each element of his claims, he must plead minimal factual allegations on those material elements that must be proved. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

Because plaintiff proceeds *pro se*, the Court will liberally construe his complaint. See Jackson v. Integra Inc., 952 F.2d 1260, 1261 (10th Cir. 1991). The Court, however, will not act as an advocate for a *pro se* litigant, see Kempf v. City of Colorado Springs, 91 Fed. App'x 106, 107 (10th Cir. 2004), and "because a *pro se* plaintiff requires no special legal training to recount the facts surrounding his alleged injury, [] he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted," Hall, 935 F.2d at 1110.[2]

## Analysis

**I.     Timeliness Of Defendants' Motion**

In his response and memorandum, plaintiff states that defendants' motion to dismiss is untimely. On June 26, 2007, the magistrate judge granted defendants' motion for leave to file out of time their motion to dismiss. See Order (Doc. #55). Plaintiff did not seek review of that order, see Fed. R. Civ. P. 72(a), or challenge that order. Instead, in support of his untimeliness argument, plaintiff points to defendants' failure to respond to the Court's previous order to show cause why

---

   [2] Plaintiff has attached copies of administrative grievances to his complaint and supplemental complaint, and he incorporates the factual allegations of those grievances in his complaints. Defendants have not objected to this method of pleading. Accordingly, in liberally construing plaintiff's complaint, the Court will consider the factual allegations of the grievances associated with each alleged cause of action, without consideration of defendants' responses to the grievances, which are also included in the grievance documents. See Strope v. Sebelius, 189 Fed. App'x 763, 766 (10th Cir. 2006).

plaintiff's *in forma pauperis* status should not be reinstated.  See Order to Show Cause (Doc. #38) filed February 9, 2007; Order (Doc. #39) filed February 22, 2007 (noting defendants' failure to respond and reinstating plaintiff's *in forma pauperis* status).  Those court orders, however, did not relate to defendants' deadline for responding to plaintiff's complaint.  Accordingly, the Court rejects plaintiff's argument that defendants' motion to dismiss is untimely.

### II.    Claims Against Cummings And McKune Under Section 1983

Defendants first move to dismiss all claims against defendants Williams Cummings and David McKune.  Plaintiff has alleged the following claims against them under Section 1983: (1) violations of the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, relating to call-outs for worship time for plaintiff's religious group (Counts 1 and 5 against Cummings, Counts 9 and 16 against McKune); (2) violations of the First and Eighth Amendments relating to plaintiff's kosher diet (Counts 2, 3 and 4 against Cummings, Count 8 against McKune); and (3) violations of the Eighth Amendment relating to a lack of heat and hot water (Counts 7 and 17 against McKune).

Defendants argue that plaintiff has alleged only that McKune denied plaintiff's various grievances as prison warden and that Cummings denied plaintiff's appeals regarding those grievances as the Designee of the Kansas Secretary of Corrections.  On this basis, defendants argue that plaintiff has not alleged the requisite personal participation by Cummings and McKune in the alleged violations of plaintiff's rights.  The Court rejects this basis for dismissal.

Under Section 1983, government officials are not vicariously liable for the misconduct of their subordinates.  Serna v. Colorado Dep't of Corr., 455 F.3d 1146, 1151 (10th Cir. 2006).  To establish a Section 1983 claim against a supervisor, plaintiff must show an "affirmative link"

-3-

between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. Id. A cause of action may accrue under Section 1983 when "defendant was in a position of responsibility, knew or should have known of the misconduct, yet failed to act to prevent future harm." McClelland v. Facteau, 610 F.2d 693, 697 (10th Cir. 1979); see also Smith v. Bruce, No. 06-3146-KHV, 2007 WL 4233515, at *4 (D. Kan. Nov. 28, 2007) (inaction may establish acquiescence by supervisor in constitutional violation).

With respect to the claims against Cummings and McKune, plaintiff has alleged that he filed grievances concerning the alleged violations, that the violations were ongoing, that his grievances were investigated improperly or not at all, and that Cummings and McKune did not take corrective actions to remedy the violations. Accordingly, plaintiff has alleged sufficient facts to support the inference that in denying plaintiff's grievances and failing to take corrective actions, Cummings and McKune acquiesced in ongoing violations of plaintiff's rights by failing to act to prevent future harm. See, e.g., Strope v. Collins, 492 F. Supp. 2d 1289, 1301 (D. Kan. 2007) (denying summary judgment in light of evidence that warden reviewed plaintiff's grievances, failed to exercise authority to overturn decisions of subordinates and therefore acquiesced in alleged violations); Houck v. City of Prairie Village, Kan., 912 F. Supp. 1438, 1442 (D. Kan. 1996) (denying motion to dismiss in light of allegations of involvement in improper investigations), reconsideration granted in part on other grounds, 924 F. Supp. 120 (D. Kan. 1996). The Court overrules this portion of defendants' motion to dismiss.

**III.  Conspiracy Claims Against Cummings and McKune**

In Count 6 of his complaint, plaintiff attempts to assert claims against Cummings and McKune under Sections 1983 and 1985(3) for conspiracy to violate his rights under the First

Amendment and the RLUIPA relating to his religious worship call-out times. Defendants move to dismiss plaintiff's conspiracy claim on the ground that plaintiff has not alleged sufficient facts to support an inference of concerted action by these two defendants. The Court agrees and sustains this portion of defendants' motion.

First, plaintiff may not maintain this conspiracy claim under Section 1985(3). That section applies only to conspiracies that are (1) motivated by racial or other class-based discriminatory animus and (2) aimed at rights protected against public and private interference. See Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993). Plaintiff's First Amendment right to the free exercise of religion is not a right to which Section 1985(3) applies. Id. at 686-87.

Plaintiff's conspiracy claim under Section 1983 also fails. To support such a claim, plaintiff must allege specific facts showing an agreement and concerted action among the defendants. Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998). Conclusory allegations of conspiracy are insufficient to state a valid claim under Section 1983. Id. (quoting Hunt v. Bennett, 17 F.3d 1263, 1266 (10th Cir. 1994)). In support of this claim, plaintiff has not alleged facts which show an agreement or concerted action between Cummings and McKune. Plaintiff alleges only that they "conspired" or engaged in a "conspiracy." As noted, a conclusory allegation of conspiracy does not properly state a claim under Section 1983. Accordingly, the Court dismisses plaintiff's conspiracy claim as alleged in Count 6 of his complaint.

**IV.    Eighth Amendment Claims Against McKune Relating To Prison Conditions**

Defendants argue that plaintiff has not properly stated a claim for relief relating to a lack of heat or hot water. In Count 7, plaintiff alleges that McKune violated the Eighth Amendment by failing to provide heat and hot water in mid-October of 2004. In support of that claim, plaintiff

alleges that McKune failed to provide hot water at night or in the morning hours and refused to turn the heat on; that it was so cold that people could not sleep; that outside temperatures had reached the low-40s and mid-30s; that the windows had no coverings or insulation; and that winter clothing had not yet been issued. In Count 17, based on allegations that "there has been no hot water in the cells, it has been ice cold and the heat has been ran [sic] at just barely luke warm [sic] causing severe discomfort and sleep loss," plaintiff alleges that McKune violated the Eighth Amendment in December of 2005.

A prison official violates the Eighth Amendment only when two requirements are met. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). First, objectively, the deprivation alleged must be sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. Id. Second, the official must have acted with a sufficiently culpable state of mind, namely deliberate indifference to inmate health or safety. Id. With regard to the second requirement, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." Id. at 837. To comply with the Eighth Amendment, a state must provide inmates reasonably adequate utilities such as hot water and heat. See Ramos v. Lamm, 639 F.2d 559, 568 (10th Cir. 1980). With respect to heat, the Supreme Court has noted that the combination of a low cell temperature at night and a failure to issue blankets might establish an Eighth Amendment violation, even though neither of those conditions of confinement would do so alone. See Wilson v. Seiter, 501 U.S. 294, 304 (1991). The Supreme Court has also noted, however, that conditions of confinement may be restrictive and even harsh – as a "part of the penalty that criminal offenders pay for their offenses against society" – without constituting cruel and unusual

punishment under the Eighth Amendment. Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

The Court concludes that plaintiff has not alleged facts which show a deprivation sufficiently serious to state a violation of the Eighth Amendment. The lack of hot water at night does not suggest a failure by the prison to provide reasonably adequate utilities. Although plaintiff has alleged discomfort and difficulty sleeping due to a lack of heat at night, he has not alleged that the prison failed to issue adequate blankets. In short, plaintiff has not alleged facts which suggest a serious risk of danger to his health, as opposed to mere discomfort.

The Court's conclusion is supported by cases from the Tenth Circuit. In Hawkes v. Wyoming Department of Corrections Honor Conservation Camp, No. 97-8006, 1997 WL 545594 (10th Cir. Sept. 4, 1997), the court of appeals stated that "while an allegation of inadequate heating may state an Eighth Amendment violation, cold temperatures for a short period of time do not alone necessarily result in a constitutional violation." Id. at *2 (citation omitted). The court then ruled that an inmate did not state a cause of action where he failed to allege facts establishing "an objectively serious threat to his life or health." Id. It specifically noted that the inmate had not alleged that he received inadequate bedding or blankets to deal with the cold. Id.; see also Prasko v. Bd. of County Comm'rs for Coffey County, Kan., No. 99-3285-GTV, 2000 WL 1880312, at *8 (D. Kan. Dec. 14, 2000) (other factor, such as failure to issue blankets, necessary to support complaint of cold conditions) (citing Wilson, 501 U.S. at 304).

In Strope v. Sebelius, 189 Fed. App'x 763 (10th Cir. July 24, 2006), the Tenth Circuit affirmed the dismissal of a claim by this same plaintiff, who alleged that ventilation fans were necessary to control excessively hot temperatures, which made it hard to sleep. Id. at 766. The court of appeals concluded that although such conditions "are no doubt uncomfortable," the allegations

were insufficient to state a claim for a violation of the Eighth Amendment.  Id.

Similarly, in this case, although plaintiff has alleged cold temperatures which caused discomfort and difficulty in sleeping, he has not alleged conditions so serious as to suggest a risk of danger to his life or health.  Therefore, plaintiff has failed to state a claim for a violation of the Eighth Amendment, and the Court dismisses Counts 7 and 17 of plaintiff's complaint.

## V.     Claims Against Thorne

In Counts 10 and 11 of his complaint, plaintiff alleges that defendant Karen Thorne violated his First Amendment and Due Process rights by withholding two or three newspapers to which he had subscribed in August of 2004.  In Counts 1 and 2 of his supplemental complaint, plaintiff alleges that Thorne committed those same violations by withholding four newspapers in January of 2006.[3]

Defendants argue that the claims against Thorne should be dismissed under K.A.R. § 44-12-601(g)(1), which provides that inmates may only receive newspapers purchased through account withdrawal requests.  See Wardell v. Duncan, 470 F.3d 954, 963 (10th Cir. 2006) (restriction in K.A.R. § 44-12-601(g)(1) constitutionally valid exercise of prison authority).  In his complaint, plaintiff concedes that his family purchased the 2004 subscription; thus, plaintiff concedes that he did not comply with the regulation.

Plaintiff does not dispute that noncompliance with the regulation mandates dismissal of any claim based on the withholding of newspapers.  Plaintiff simply points to Counts 1 and 2 of his supplemental complaint, which allege that plaintiff paid for his 2006 subscription from his prison account, in compliance with K.A.R. § 44-12-601(g)(1).  In light of that allegation, the Court

---

[3]     The Court granted plaintiff leave to file a supplemental complaint containing these two additional claims.  See Order (Doc. #6) filed August 30, 2006.

overrules this portion of defendants' motion as it relates to Counts 1 and 2 of the supplemental complaint.[4] Based on plaintiff's admitted non-compliance with the regulation in 2004 and his lack of argument in opposition to dismissal of the 2004 claims, the Court dismisses Counts 10 and 11 of plaintiff's complaint.

In support of their motion to dismiss the due process claim against Thorne, defendants argue that an inmate has no right to privacy in his cell, and that therefore notice or other due process is not required before items are seized from an inmate's cell. As plaintiff points out, however, the supplemental complaint does not allege that Thorne seized anything from his cell. Therefore, this portion of defendants' motion is overruled.

## VI. Claims Against Obeidat

### A. First Amendment Retaliation

In Count 12, plaintiff asserts that Corrections Officer Obeidat (first name unknown) retaliated against him for exercising rights under the First Amendment. Specifically, plaintiff alleges that during the night and early morning of November 24 and 25, 2005, Obeidat interrupted him two or three times while he was kneeling and praying in his cell, asking him whether he was all right; that Obeidat kept shining a flashlight on him, including in his eyes, during those interruptions; that plaintiff told Obeidat that his conduct was "out of line" and "out of duty," and that plaintiff would file a complaint against him if another interruption occurred; and that in retaliation for plaintiff's threat to file a complaint, Obeidat returned with another officer and ordered plaintiff handcuffed for

---

[4] In his opposition brief, plaintiff seeks sanctions under Fed. R. Civ. P. 56(g), arguing that defendants acted in bad faith in making this argument (in light of the supplemental complaint) and in making mistakes with respect to defendants' list of lawsuits which plaintiff filed in this Court. Defendants, however, have not submitted any affidavits in bad faith. Sanctions under Rule 56(g) are therefore unwarranted, and the Court overrules plaintiff's motions.

a period of 25 minutes, with the cuffs so tight that they left marks, then ransacked and trashed his cell.

Defendants argue that because plaintiff's cell was subject to search at any time, he has not sufficiently alleged that he suffered an adverse action in retaliation for his threat to file a grievance. Defendants further argue that plaintiff has not alleged sufficient facts from which a retaliatory motive could be inferred. The Court rejects these arguments.

The Tenth Circuit has set forth the law governing retaliation claims under the First Amendment as follows:

> We have held that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights. This principle applies even where the action taken in retaliation would be otherwise permissible. . . . Obviously, an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity. Accordingly, a plaintiff must prove that "but for" the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place. An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights.

Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998) (citations and internal quotations omitted) (emphasis in original). In this context, a prisoner's first amendment right to petition the government for redress of grievances encompasses the filing of inmate administrative appeals or grievances. Fogle v. Pierson, 435 F.3d 1252, 1264 (10th Cir. 2006).

In this case, plaintiff has specifically alleged that Obeidat had him cuffed very tightly and then "ransacked" and "trashed" his cell. A reasonable jury could certainly find that such conduct constitutes harassment of or retaliation against plaintiff. Therefore, even if those actions would have been otherwise permissible, plaintiff has stated a claim under the First Amendment by alleging that Obeidat took those actions to harass or retaliate against plaintiff for threat to file administrative

grievances. See, e.g., Strope v. Gibbens, No. 01-3358-KHV, 2003 WL 1906458, at *6 (D. Kan. Apr. 17, 2003) (retaliation claim by this plaintiff survived summary judgment based on evidence of potentially punitive actions, even without evidence of physical harm).

The Court further concludes that plaintiff has adequately alleged specific facts giving rise to an inference of a retaliatory motive. Defendants argue that the temporal proximity between plaintiff's threat to file a grievance and Obeidat's actions is not necessarily significant in light of the fact that plaintiff was constantly filing grievances. It is true that proof of temporal proximity "may be less persuasive than might otherwise be the case" where the plaintiff "has undertaken a plethora of grievances and lawsuits," since any action could be seen as retaliation for one of those legal filings. See Brown v. Sales, Nos. 97-6618, 97-6119, 97-6130, 1998 WL 42527, at *3 (10th Cir. Feb. 4, 1998). In this case, however, plaintiff has alleged that the retaliatory actions occurred immediately after his threat to file a grievance against Obeidat. Such close temporal proximity is sufficient at this stage to meet the requirement of establishing a retaliatory motive. See, e.g., id. ("protected conduct closely followed by adverse action" may justify an inference of retaliatory motive); Smith v. Maschner, 899 F.2d 940, 948-49 (10th Cir. 1990) (retaliatory state of mind difficult to establish by direct evidence; circumstantial evidence, including close temporal proximity, may suffice); see also Strope v. Sebelius, 189 Fed. App'x at 767 (this plaintiff adequately stated claim for retaliation in alleging conduct occurring immediately after filing grievances); Strope v. Gibbens, 2003 WL 1906458, at *6 (close temporal proximity sufficient to support retaliation claim by this plaintiff).

For these reasons, the Court overrules defendants' motion as it relates to plaintiff's Count 12.

B.     Interruption Of Prayer

In Count 13 of his complaint, plaintiff alleges that in interrupting his prayer, Obeidat violated

-11-

his right to the free exercise of religion under the First Amendment and the RLUIPA. The Court agrees with defendants that the alleged conduct is not sufficient to establish a violation of either the Constitution or the RLUIPA.

To establish a violation of the First Amendment's free exercise clause, plaintiff must show that Obeidat "substantially burdened his sincerely-held religious beliefs." Boles v. Neet, 486 F.3d 1177, 1182 (10th Cir. 2007). In asserting this claim, plaintiff alleges that Obeidat interrupted his praying multiple times on a single night. Those interruptions, however, did not "(1) significantly inhibit or constrain plaintiff's religious conduct or expression, (2) meaningfully curtail plaintiff's ability to express adherence to his faith, or (3) deny plaintiff reasonable opportunity to engage in fundamental religious activities." See Vasquez v. Ley, No. 95-1134, 1995 WL 694149, at *2 (10th Cir. Nov. 24, 1995) (quoting Werner v. McCotter, 49 F.3d 1476, 1480 & n.2 (10th Cir. 1995)). Plaintiff has not alleged that Obeidat prevented him from continuing his prayer that night or at any other time; nor has he alleged that his religious beliefs required uninterrupted prayer at that particular time. Accordingly, the Court concludes as a matter of law that Obeidat did not substantially burden plaintiff's exercise of religious beliefs, and dismisses plaintiff's free exercise claim against Obeidat.

For the same reason, plaintiff's claim based on the RLUIPA fails. That statute prohibits the imposition of a substantial burden on the religious exercise of an inmate unless the government makes a particular showing. See 42 U.S.C. § 2000cc-1(a). Although the RLUIPA fails to define "substantial burden," the Tenth Circuit has relied on RLUIPA's legislative history, which reveals that "substantial burden" in the statute is to be interpreted by reference to First Amendment jurisprudence. See Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 661 (10th Cir. 2006) (citing 146 Cong. Rec. 7774-01, 7776). Therefore, because plaintiff's allegations do not

satisfy the First Amendment's "substantial burden" standard, they also fail to state a claim for violation of the RLUIPA, and the Court dismisses plaintiff's claim under that statute as well.

## VII. Claim Against Jewell

In Count 14 of his complaint, based on his allegation that defendant Randy Jewell moved him to a different cellhouse in retaliation for his filing of so many grievances, plaintiff asserts a retaliation claim against Jewell under the First Amendment. As their sole basis for dismiss of this claim, defendants argue that the movement to a different cellhouse did not constitute an "adverse effect." In this instance, however, a reasonable jury could conclude that moving plaintiff from his cellhouse constituted harassment or retaliation. See supra Part VI.A (setting forth applicable law). Accordingly, it does not appear beyond doubt that plaintiff can prove no set of facts that would entitle him to relief on this claim, and the Court overrules this portion of defendants' motion.

## VIII. Summary

In summary, Counts 6, 7, 10, 11, 13 and 17 do not state actionable claims, and the Court therefore dismisses those counts under Rule 12(b)(6). The Court overrules defendants' other arguments for dismissal. Accordingly, plaintiff's remaining claims include the claims asserted in Counts 1, 2, 3, 4, 5, 8, 9, 12, 14, 15 and 16 of plaintiff's complaint and Counts 1 and 2 of plaintiff's supplemental complaint.[5] Those claims are as follows:

> Count 1    First Amendment claim against Cummings (interference with religious call-out times);
>
> Count 2    First Amendment claim against Cummings (spoiled kosher foods);
>
> Count 3    Eighth Amendment claim against Cummings (spoiled kosher foods);

---

[5] In their motion and brief, defendants did not identify or argue any basis for dismissal of Count 15 of plaintiff's complaint.

-13-

| | |
|---|---|
| Count 4 | First Amendment claim against Cummings (kosher diet); |
| Count 5 | First Amendment and RLUIPA claims against Cummings (sufficient time for religious call-outs); |
| Count 8 | Eighth Amendment claim against McKune (spoiled foods); |
| Count 9 | First Amendment claim against McKune (interference with religious call-out times); |
| Count 12 | First Amendment claim against Obeidat (retaliation, ransacking of cell); |
| Count 14 | First Amendment claim against Jewell (retaliation, movement from cellhouse); |
| Count 15 | First Amendment claim against defendant Thiesen (first name unknown) (retaliation, early-morning urine test); |
| Count 16 | First Amendment claim against McKune (interference with religious call-outs); |
| Supp. Count 1 | First Amendment claim against Thorne (withholding newspapers); |
| Supp. Count 2 | Due Process claim against Thorne (withholding newspapers). |

**IT IS THEREFORE ORDERED** that Defendants' Motion To Dismiss Pursuant To Rule 12(b)(6) (Doc. #47) filed May 15, 2007, be and hereby is **SUSTAINED IN PART AND OVERRULED IN PART**, as set forth more fully herein.

Dated this 22nd day of February, 2008, at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge